**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

**DUSTIN ANDERSON and FRANKLIN GONZALES, individually and on behalf of all others similarly situated,**

Plaintiffs,

vs.                                                    Case No. _____

**BASS PRO OUTDOOR WORLD, LLC.**
Serve:
CT Corporation System
120 South Clayton
Clayton, MO 63105

Defendant.

## COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs, through counsel, bring the following class action complaint against Defendant, Bass Pro Outdoor World, LLC:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c), because: (i) Defendant is actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) Defendant transacts business in the State and in the District based on its sales with residents of the District; (iii) upon information and belief Defendant has committed unlawful acts in the District by and through its sales and/or

finance practices with residents of this District; and (iv) a substantial part of the events or omissions giving rise to the claim occurred in this District.

<u>GENERAL ALLEGATIONS</u>

3.   This is a class action brought by Plaintiffs on behalf of all consumers in the United States who attempted to purchase a Johnny Morris Carbonlite 2.0 rod and reel combo during Defendant's 2018 Spring Fishing Classic (an annual, nationwide sales event), but were unable to due so because Defendant failed to stock sufficient quantities of the product to meet reasonably anticipated demand.

4.   Defendant advertised the product in print advertisements and online across the United States and with an advertised price of $119.97. The advertisement (as shown below) notified prospective buyers that the regular price for the product was $239.98 and that they were getting the "#1 selling rod for free with the purchase of the reel."



5.   The advertisement did not state that supplies were in any way limited or that Defendant would refuse to provide rain checks to prospective buyers or that Defendant would refuse to offer comparable products to prospective buyers at the discounted price.

6. In fact, Defendant stocked wholly inadequate supplies of the rod and reel combo knowing that demand would be high.

7. Defendant failed to supply stores with sufficient quantities of the Johnny Morris Carbonlite 2.0 rod and reel combo which tended to require consumers to purchase other, more expensive substitute rod and reels..

8. Defendant advertised the Johnny Morris Carbonlite 2.0 rod and reel combo intentionally to entice consumers to enter its stores to buy this and other products despite the unavailability of the rod and reel combo.

9. At no time did Defendants retract or correct the advertisement after it knew or should have known that there was no inventory available to meet demand.

10. Plaintiffs seek relief in this action individually and on behalf of a nationwide Class and state subclasses (as defined herein) under state consumer fraud statutes and common law.

## THE PARTIES

11. Plaintiffs, Frank Gonzales and Dustin Anderson, are Missouri residents and at all times relevant to this complaint (1) received the advertisement for Defendant's 2018 Spring Fishing Classic, which included the advertised sale on the Johnny Morris Carbonlite 2.0 rod and reel combo ("Carbonlite 2.0"), (2) visited Defendant's store in Springfield, Missouri with the express intention to purchase the Carbonlite 2.0, and (3) were unable to do so because Defendant did not have any Carbonlite 2.0 in stock.

12. Mr. Gonzales attempted to purchase a Carbonlite 2.0 on February 27, 2018.

13. At the time of Plaintiff's attempted purchase, Defendant did not offer Mr. Gonzales a rain check or a comparable replacement product.

14. Mr. Gonzales asked the sales associate if the store would receive additional quantities of the Carbonlite 2.0 combo before the conclusion of the Spring Fishing Classic and the associate told Mr. Gonzales that the combo was unavailable "company wide."

15. Mr. Anderson attempted to purchase a Carbonlite 2.0 on February 25, 2018. He called the Springfield, Missouri store on March 3, 2018 to see if Defendant had restocked its supply of Carbonlite 2.0 rod/reel combos.

16. At the time of Plaintiff's attempted purchase, Defendant did not offer Mr. Anderson a rain check or a comparable replacement product.

17. Defendant took no steps to notify Plaintiffs or the class that the advertisement was in error, quantities were limited, or that there was any correction to the advertisement.

18. In fact, throughout the sale Defendant distributed the advertisement in its stores.

19. Plaintiffs justifiably and reasonably relied on Defendant's advertisement touting the steeply discounted price on the Carbonlite 2.0 when the attempted to purchase the Carbonlite 2.0.

20. Plaintiffs Gonzales and Anderson expected there to be sufficient supply of the rod/reel combo on hand to meet the demand for the rod/reel combo.

21. Defendant, Bass Pro Outdoor World, LLC ("Bass Pro"), is a Missouri limited liability company.

22. Defendant operates 82 retail stores across the United States and Canada.

23. Defendant markets and sells a wide variety of hunting, fishing, and outdoor gear at these retail stores and online.

24. Bass Pro's national headquarters are located in Springfield, Missouri.

25. Defendant Bass Pro can be served with process by serving CT Corporation System 120 S. Clayton Clayton, Missouri 63105.

## SUBSTANTIVE ALLEGATIONS

26. Defendant is one of the nation's largest retailers of fishing products.

27. For a number of years, Defendant has conducted a large event called the Spring Fishing Classic.

28. At the Spring Fishing Classic, Defendant offers instructional seminars, product demonstrations, and discounted prices on a number of its products.

29. Defendant's Spring Fishing Classic is a highly profitable event.

30. In conjunction with the Spring Fishing Classic, Defendant distributes a flyer advertising the prices for sale items.

31. Defendant distributes the Spring Fishing Classic marketing materials via mail, news media, and online.

32. The front page of the advertisement for the 2018 Spring Fishing Classic emphasized a steep, 50% discount on the Carbonlite 2.0 rod and reel combo. In fact the Carbonlite 2.0 was the first item advertised in materials sent to prospective customers for all of its stores except those located in Alaska and Canada.

33. This advertised sale item is often referred to as a "door buster", designed to encourage store traffic.

34. Defendant also placed copies of the 2018 Spring Fishing Classic advertising materials in each of its retail stores prior to and during the 2018 Spring Fishing Classic.

35. As discussed above, the advertised price for the Carbonlite 2.0 combo was represented to be 50% of the regular price.

36. At the time of the sale, the regular catalog price and online price for the Carbonlite 2.0 combo is $209.98. An image of the Carbonlite 2.0 combo sales listing from the 2018 Bass Pro catalog is included below.



37. At no time was the regular price of the combo as advertised in the flyer or online.

38. Defendant touted the rod offered in the deal as the "#1 selling rod."

39. Defendant sent the marketing materials for the 2018 Spring Fishing Classic to prospective buyers across the United States. With the exception of the marketing materials sent to Alaska and Canada, these marketing materials advertised the sale of the Carbonlite 2.0 rod and reel combo for $119.97.

40. The Carbonlite 2.0 Casting rod alone is regularly priced at $119.99. According to Defendant's website:

They're built with Carbon Coil Technology™, an advanced construction process that creates a double-helix configuration of materials for structural reinforcement. Made with RT4 Graphite, developed for the avid tournament angler, rod blanks are light and also very sensitive, so anglers can use them with confidence—even with a win on the line. Other features include a line ID system that allows anglers to keep track of and to easily identify the line weight used on each rod and reel setup. Fuji® FaZlite guides further enhance weight reduction. The CarbonLite 2.0 Casting Rod uses Winn® grips to deliver the ultimate in comfort, reducing stress in your hands and body leading to longer more accurate casts as the day goes on. A skeletonized Air reel seat improves sensitivity by maximizing blank exposure.

41. The Carbonlite 2.0 Baitcasting reel alone is also regularly priced at $119.99. According to Defendant's website:

We've tweaked our Bass Pro Shops® Johnny Morris CarbonLite 2.0 Baitcast Reel to make it not only stronger and smoother, but also significantly faster—as in, up to 8.3:1 fast! With the 2.0, you can really get aggressive with your retrieves, and you can also steer a hawg out of a thicket with less trouble. Take a tour of the CarbonLite 2.0, and we think you'll like what you see. The rigid 1-piece aluminum frame connects super-strong carbon fiber side covers, a flex-inhibiting combination that keeps the internals in alignment, no matter how heavy the load. The double-anodized machined-aluminum spool is V-grooved and ported, with a friction-eliminating titanium nitride-coated line guide in place to assure perfect line flow. Strong and durable, the aluminum crankshaft and brass main gear complement a planetary drivetrain that delivers silky-smooth operation, aided by a premium 10-bearing system that includes double-shielded stainless steel ball bearings and Powerlock™ instant anti-reverse®. Our time-tested Dual Braking System™ combines both centrifugal and magnetic braking for truly outstanding performance on every cast. The powerful 6-disc carbon fiber drag will slow even a monster bass. And the smooth-turning carbon fiber recurve handle enhances your comfort with premium EVA grips.

42. Defendant did not advise prospective buyers that supplies were inadequate, that the sale price would only be offered while supplies lasted, that rain checks would not be provided, or that substitutions would not be permitted.

43. In fact, the sale was not restricted or limited in any way.

44. Defendant's 2018 Spring Fishing Classic was scheduled to run from February 16, 2018 through March 4, 2018.

45. Prior to February 16, 2018, Defendant was aware of inventory levels of the Carbonlite 2.0 rod/reel combo at each Bass Pro retail store.

46. On information and belief, Defendant was aware that the Carbonlite 2.0 rod/reel combo inventory was insufficient to meet the expected consumer demand for the product at the advertised, discounted price.

47. Given the drastically discounted price and Defendant's aggressive marketing campaign, consumers responded in great number to the advertisement attempting to purchase the Carbonlite 2.0 rod/reel combo.

48. However, due to the insufficient inventory levels, the vast majority of consumers were unable to purchase the Carbonlite 2.0 rod/reel combo at the advertised price.

49. Plaintiff, Dustin Anderson, visited the Springfield, Missouri retail location on February 25, 2018 and called the store on March 3, 2018 and attempted to purchase the Carbonlite 2.0 rod/reel combo.

50. A sales associate at the store told Mr. Anderson that the store did not have any Carbonlite 2.0 rod/reel combos in stock.

51. Mr. Anderson requested that Defendant issue a rain check or substitute a comparable product; however, the sales associate informed Mr. Anderson that Defendant would not issue him a rain check or allow the substitution.

52. Plaintiff, Frank Gonzales, visited the Springfield, Missouri retail location on February 27, 2018 and attempted to purchase the Carbonlite 2.0 rod/reel combo.

53. A sales associate at the store told Mr. Gonzales that the store did not have any Carbonlite 2.0 rod/reel combos in stock. The sales associate also told Mr. Gonzales that Defendant would not issue any rain checks and that the Carbonlite 2.0 rod/reel combo was unavailable company-wide.

54. At no time did Defendant inform prospective customers, including Plaintiffs, that the Carbonlite 2.0 rod/reel combo supply was limited, or that the advertised price was only good while supplies lasted, or that rain checks would not be provided, or that no comparable substitute product would be offered for sale.

55. On information and belief, Defendant used its advertisement for the Carbonlite 2.0 rod/reel combo sale price as a means to attract customers to its retail stores where they would buy other—possibly more expensive items—when they discovered that the Carbonlite 2.0 rod/reel combo was not available for purchase.

56. Defendant's use of the Carbonlite 2.0 rod/reel combo advertisement in the Spring Fishing Class advertisement was fraudulent and deceptive in that it did not advise customers that supplies were limited, that Defendant would not provide customers rain checks, or that substitute products were not available for purchase.

57. Alternatively, Defendant had sufficient supplies of the Carbonlite 2.0 rod/reel combo in inventory, but failed to supply retail stores with sufficient quantities to meet customer demand.

58. On information and belief, both the Carbonlite 2.0 rod and the Carbonlite 2.0 reel were available for purchase online during and immediately following the 2018 Spring Fishing Classic.

59. On March 7, 2018 (only three days after the Spring Fishing Classic ended), Defendant's website even showed that the Carbonlite 2.0 rod (6'6", model JCT66MLTF) was in stock at the Springfield, Missouri store—a location that during the 2018 Spring Fishing Classic represented to customers that the Carbonlite 2.0 rod/reel combo was not in stock. See the screenshot below.



60. As a direct and proximate result of Defendant's fraudulent and deceptive marketing practices, consumers—including Plaintiffs—suffered the loss of the bargain on the Carbonlite 2.0 rod/reel combo and the loss of additional monies spent at the 2018 Spring Fishing Classic on other products.

61. Defendant's false and deceptive marketing of the sale on the Carbonlite 2.0 rod/reel combo was material to consumers, including Plaintiffs and members of the putative class, in their decision to attend the 2018 Spring Fishing Classic event.

62. Defendant's advertisements for the 2018 Spring Fishing Classic event was false, misleading, unfair, and deceptive because Defendant failed to ensure that its inventory levels were sufficient to meet customer demand, failed to warn consumers—including Plaintiffs—of the limited available quantities, failed to offer customers rain checks for the Carbonlite 2.0 rod/reel combo, failed to offer a comparable product for sale at a deep discount, and failed to disclose to customers that the Carbonlite 2.0 rod/reel combo was, in fact, in stock at the retail stores or online during the 2018 Spring Fishing Classic.

63. On information and belief, Defendant withheld its Carbonlite 2.0 rod/reel combo inventory to sell at retail stores after the 2018 Spring Fishing Classic in an effort to increase profits on the sale of the product.

64. Defendant owed its customers, including Plaintiffs, a duty to disclose that it had a limited supply of the Carbonlite 2.0 rod/reel combo available for sale because Defendant was in a superior position to know that quantities available for purchase. Plaintiffs and other customers could not have known how many Carbonlite 2.0 rod/reel combos were actually available for purchase during the 2018 Spring Fishing Classic.

65. On information and belief, Defendant intentionally concealed and/or failed to disclose to customers (including Plaintiffs) the inadequate supply of Carbonlite 2.0 rod/reel combo available for sale.

66. Alternatively, Defendant failed to make its supply of Carbonlite 2.0 rod/reel combos available for purchase at retail stores during the 2018 Spring Fishing Classic in an effort to force customers to purchase additional, higher margin items.

67. Members of the putative class justifiably relied upon Defendant's 2018 Spring Fishing Classic advertisement to their detriment by purchasing other products from Defendant many of which were higher priced that the Carbonlite 2.0 rod/reel combo available for sale. Without Defendant's deceptive 2018 Spring Fishing Classic advertisement, members of the putative class would not have made these purchases.

## CLASS ALLEGATIONS

68. Plaintiffs bring this class action on behalf of themselves and all other similarly situated consumers in the United States. The proposed Classes defined as follows:

    a. **Nationwide class**: All individuals who received a copy of Defendant's advertisement for the 2018 Spring Fishing Classic that included the advertised sale price on the Carbonlite 2.0 rod and reel combo, and visited one of Defendant's retail stores or website during the promotional period designated in the written advertisement and attempted to purchase the advertised Carbonlite 2.0 rod and reel combo for $119.97, but were unable to do so due to product unavailability.

    b. **Missouri Subclass**: All Missouri residents who received a copy of Defendant's advertisement for the 2018 Spring Fishing Classic that included the advertised

sale price on the Carbonlite 2.0 rod and reel combo, and visited one of Defendant's retail stores or website during the promotional period designated in the written advertisement and attempted to purchase the advertised Carbonlite 2.0 rod and reel combo for $119.97, but were unable to do so due to product unavailability.

69. Excluded from the Nationwide Class and all subclasses are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

70. Plaintiffs also bring this class action on behalf of themselves and subclasses consisting of consumers in the following states: Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Maryland, Michigan, Missouri, Mississippi, North Carolina, New Hampshire, New Jersey, Nevada, New York, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington (the "State Subclasses"). Excluded from the Classes are assigned judges and members of their immediate families, and Defendants, and their subsidiaries, affiliates, officers, and directors.

71. The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class and all State Subclasses.

72. The proposed Class and Subclasses are so numerous that individual joinder of all their members is impracticable. On information and belief, members of the Class and Subclasses number in the thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be ascertained through appropriate discovery. Class members may be notified of the pendency of this action by

mail, publication and/or through the records of Defendant and third party retailers and vendors.

73. There are common questions of law and fact affecting Plaintiffs and Class Members. Common legal and factual questions include, but are not limited to:

    a. Whether Defendant marketed and advertised the Carbonlite 2.0 rod/reel combo in a way that was false or misleading;

    b. Whether Defendant failed to provide retail stores with sufficient quantities of the Carbonlite 2.0 rod/reel combo to meet customer demand;

    c. Whether Defendant withheld supplies of the Carbonlite 2.0 rod/reel combo from retail stores until after the conclusion of the 2018 Spring Fishing Classic in an effort to increase profit margin on the sale of the product by selling it at a higher price;

    d. Whether Defendant failed to supply retail stores with sufficient quantities of the Carbonlite 2.0 rod/reel combo to induce customers to buy other products with a higher product margin;

    e. Whether by the misconduct set forth in this complaint, Defendant has engaged in unfair, fraudulent or unlawful business practices;

    f. Whether Defendant's conduct was committed knowingly or intentionally;

    g. Whether Defendant's conduct constitutes violations of the state laws asserted herein;

    h. Whether Defendant was unjustly enriched by its conduct;

    i. Whether class members suffered an ascertainable loss as a result of the Defendant's fraudulent and misleading advertising and sales practices;

j. Whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

74. Plaintiffs' claims are typical of the claims of the proposed Class and Subclasses because Plaintiffs and Class Members were harmed in the same manner by the same conduct.

75. Plaintiffs and Class Members have all sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

76. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses.

77. Their interests do not conflict with the interests of the Class and Subclasses they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

78. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.

79. Given the relatively small amount of individual damages at stake, individual litigation is not practicable.

80. Individual Class members will not wish to undertake the burden and expense of individual cases.

81. In addition, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents the potential for inconsistent or contradictory judgments.

82. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

83. Questions of law and fact common to the Class and Subclasses predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

84. In each case, Defendants deceived Plaintiffs and Class Members as to the availability of the Carbonlite 2.0 rod/reel combo and used deceptive marketing and sales techniques to induce Plaintiffs and Class Members to purchase products with a higher profit margin. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

## COUNT I—MISSOURI MERCHANDISING PRACTICES ACT—MO. REV. STAT. § 407.010, ET SEQ.

85. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

86. At all times pertinent to this petition, Defendant sold and advertised the sale of consumer merchandise within the State of Missouri. Specifically with respect to this complaint, Defendant advertised the sale of the Carbonlite 2.0 rod/reel combo in connection with the 2018 Spring Fishing Classic.

87. Defendant marketed, advertised, and sold the Carbonlite 2.0 rod/reel combo in connection with the 2018 Spring Fishing Classic included, to individuals and families (including Plaintiffs and Class Members) for personal, family, or household purposes.

88. In the course and scope of its marketing, advertisement, and sale of the Carbonlite 2.0 rod/reel combo, Defendant:

    a.  Failed to provide its retail stores with adequate quantities of the rod/reel combo to meet expected demand;

    b.  Failed to notify prospective buyers, including Plaintiffs and Class Members, that supplies of the rod/reel combo were limited and that the advertised price would only be good while supplies lasted;

    c.  Intentionally failed to stock more rod/reel combos at the retail stores during the 2018 Spring Fishing Classic to enable Defendant to sell the same product through its catalog, online, and at its retail stores at a higher price after the conclusion of the Fishing Classic; and

    d.  Failed to offer customers rain checks or substitute products when the Carbonlite 2.0 rod/reel combo was not available.

89. Defendant's representations to Plaintiff were false and made knowingly by Defendant or without knowledge as to its truth or falsity and were, therefore, a deception, fraud, false pretense, false promise, or misrepresentation as described by § 407.020, RSMo. and were, therefore, a violation of § 407.020, RSMo., which prohibits such practices.

90. As a direct and proximate result of Defendant's conduct, Plaintiffs and class memebrs suffered an ascertainable loss in that (1) they were unable to obtain the benefit of Defendant's advertised bargain on the Carbonlite 2.0 rod/reel combo and (2) they purchased other higher-priced items at the retail stores that they did not intend to purchase or that provided Defendant with a higher profit margin.

91. Pursuant to § 407.025, RSMo. Plaintiffs and Class Members are entitled to reasonable attorney's fees in connection with seeking recovery for Defendant's conduct because Defendant's actions have proximately caused Plaintiff to incur the legal expenses necessary to bring this action.

92. Defendant acted with malice, intent, and/or reckless disregard for consumers who attempted to purchase the Carbonlite 2.0 rod/reel combo during the 2018 Spring Fishing Classic, warranting punitive damages.

## COUNT II—UNJUST ENRICHMENT

93. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

94. Plaintiffs and Class Members conferred a benefit on Defendant by responding to Defendant's advertisement for the Carbonlite 2.0 rod/reel combo discussed above by entering Defendant's retail stores and purchasing products besides the Carbonlite 2.0 rod/reel combo that they did not intend to purchase or other products that provided Defendant with a higher profit margin.

95. Defendant was aware of this benefit, and, in fact, intended this to occur as a result of its fraudulent, deceitful marketing and sales practices.

96. Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases, which retention under these circumstances is unjust and inequitable because, among other misconduct more fully set forth above, Defendant failed to provide its retail stores with adequate quantities of the Carbonlite 2.0 to meet the expected demand for the product, which caused injuries to Plaintiff and Class Members.

97. Because Defendant's retention of the benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment.

**COUNT III—UNFAIR AND DECEPTIVE ACTS AND PRACTICES UNDER THE VARIOUS STATE LAWS IN WHICH CLASS MEMBERS RESIDE (IF THE COURT EVENTUALLY DETERMINES THAT THE LAWS OF A CONSUMERS' RESIDENCE APPLY TO DEFENDANTS' WRONGFUL, UNFAIR, AND DECEPTIVE ACTS)**

98. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

99. As the choice of law question cannot be conclusively addressed at this point in the litigation, Plaintiffs state the following alternative causes of action under the laws of the states of residence of Class Members, if it is later determined by the Court that the choice of law rules require the application of these state laws.

100. The practices discussed above, including, but not limited to Defendant's failure to provide an adequate supply of the Carbonlite 2.0 rod/reel combo to retail stores during the 2018 Spring Fishing Classic, failing to advise Plaintiffs and Class Members that the sale price would only apply while supplies of the Carbonlite 2.0 rod/reel combo lasted, failing to provide Plaintiffs and Class Members with rain checks or substitute products, and holding back supplies of the Carbonlite 2.0 rod/reel combo until after the 2018 Spring Fishing Classic to increase profit margins on the product all constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the state consumer protection statutes listed in the paragraphs below.

101. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1,

et seq. Particularly, Alabama law prohibits deceptive acts or practices in the conduct of any trade or commerce including, but not limited to (9) Advertising goods or services with intent not to sell them as advertised; (10) Advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity; (11) Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions.

102.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Revised Statutes § 44-1521, *et seq*. Particularly, Arizona law prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. Ann. § 44-1522(A). By engaging in the practices discussed above, Defendants have violated Arizona Revised Statute Annotated § 44-1522(A).

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated § 4-88-101, *et seq*. In particular, Arkansas law provides:

Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; . . . (3) Advertising the goods or services with the intent not to sell them as advertised; . . . (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade. . . .

Ark. Code Ann. § 4-88-107.

Arkansas law further provides,

> "[w]hen utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful: (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."  Ark. Code Ann. § 4-88-108.

104.    By engaging in the practices discussed above Defendants violated Arkansas Code Annotated §§ 4-88-107, 4-88-108.

105.    Defendants are subject to the Unfair Competition Law ("UCL"), California Bus. & Prof. Code §§ 17200 *et seq.*  The UCL provides in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ."  Defendants' conduct, as described herein, violated the "unlawful" prong of the UCL. Defendants' conduct, as described herein, also violated the "fraudulent" prong of the UCL.   Defendants' acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute "unfair" business acts and practices under the UCL.  Defendants' conduct offends public policy against false advertising.   Defendants' conduct is also immoral, unethical, and unscrupulous because it seeks to capitalize on consumer's desire for an accurate weapon sight through false and misleading representations.  Further, the injuries suffered by the California Subclass outweigh any conceivable benefit to consumers or competition that may derive from Defendants' conduct.

106.    Defendants have violated the Consumers Legal Remedies Act (the "CLRA"), Calif. Civ. Code §§ 1750 *et seq.*  Defendants violated and continue to violate the CLRA

by engaging in the practices proscribed by Section 1770(a) in its transactions with members of the California Subclass.

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colorado Revised Statutes § 6-1-101, *et seq*. In particular, Colorado law provides:

A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . . (i) Advertises goods, services, or property with intent not to sell them as advertised; . . . (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction . . . . Colo. Rev. Stat. § 6-1-105.

108.    By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated Colorado Revised Statutes § 6-1-105.

109.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the General Statutes of Connecticut § 42-110a, *et seq*. In particular, Connecticut law provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). By engaging in the practices discussed above, Defendants have violated the General Statutes of Connecticut § 42-110b.

110.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Statutes § 501.201, *et seq*. In particular, Florida law provides, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby

declared unlawful." Fla. Stat. § 501.204(1). By engaging in the practices discussed above, Defendants have violated Florida Statutes § 501.204(1).

111.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Georgia Code Annotated §10-1-390, et seq. In particular, Georgia law provides:

A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (9) Advertises goods or services with intent not to sell them as advertised. Ga. Code Ann. § 10-1-372.

112.     Georgia law further provides:

Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful: . . . (9) Advertising goods or services with intent not to sell them as advertised . . .Ga. Code Ann. § 10-1-393(a).

113.     By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated Georgia Code Annotated §§ 10-1-372, 10-1-393(a).

114.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Illinois Compiled Statutes 505/1, *et seq*. In particular, Illinois law provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, [footnote] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. . . . 815 Ill. Comp. Stat. 505/2.

115. By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated 815 Illinois Compiled Statutes 505/2.

116. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Indiana Code § 24-5-0.5-1, *et seq*. In particular, Indiana law provides:

(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts: (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it. Ind. Code § 24-5-0.5-3.

117. By engaging in the practices discussed above, Defendant has violated Indiana Code § 24-5-0.5-3.

118. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Statutes Annotated § 50-623, *et seq*. In particular, Kansas law provides:

(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction; (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled: (1) Representations made knowingly or with reason to know that: ( (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . . Kan. Stat. Ann. § 50-626.

119. By engaging in the practices discussed above, Defendant has violated Kansas Statutes Annotated § 50-626.

120. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Revised Statutes Annotated § 51:1401, *et seq*.

Particularly, Louisiana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. Ann. § 51:1405A. By engaging in the practices discussed above, Defendant has violated Louisiana Revised Statutes Annotated § 51:1405A.

121.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Maryland Code Annotated, Commercial Law § 13-101, *et seq*.

122.    In particular, Maryland law provides:

> Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (3) Failure to state a material fact if the failure deceives or tends to deceive; . . . (5) Advertisement or offer of consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent them as advertised or offered; . . . (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service . . . Md. Code Ann., Com. Law § 13-301.

123.    By engaging in the practices discussed above, Defendant has violated Maryland Code Annotated, Commercial Law § 13-301.

124.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the General Laws of Massachusetts Chapter 93A, § 1, *et seq*. In particular, Massachusetts law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws Ch. 93A, § 2. By engaging in the practices discussed above, Defendant has violated the General Laws of Massachusetts Chapter 93A, § 2.

125.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Michigan Compiled Laws § 445.901, *et seq.* In particular, Michigan law provides:

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. . . . . (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. . . . . (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. . . . (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. Mich. Comp. Laws § 445.903.

126.     By engaging in the practices discussed above Defendant has violated Michigan Compiled Laws § 445.903.

127.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-3, *et seq*.

128.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nevada Revised Statutes § 598.0903, *et seq.* Nevada law provides in particular:

A person engages in a "deceptive trade practice" if, in the course of his business or occupation, he: . . . 9. Advertises goods or services with intent not to sell or lease them as advertised. . . . 15. Knowingly makes any other false representation in a transaction. . . . Nev. Rev. Stat. § 598.0915.

129.     By engaging in the practices discussed above, Defendant has violated Nevada Revised Statutes § 598.0915.

130.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Revised Statutes Annotated § 358-A:1, *et seq*. Particularly, New Hampshire law provides:

It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: . . . IX. Advertising goods or services with intent not to sell them as advertised . . . N.H. Rev. Stat. Ann. § 358-A:2.

131. By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated New Hampshire Revised Statutes Annotated § 358-A:2.

132. Defendant has engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Jersey Statutes Annotated § 56:8-1, *et seq*. Particularly, New Jersey law provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . . N.J.S.A. § 56:8-2.

133. By engaging in the practices discussed above, Defendant has violated New Jersey Statutes Annotated § 56:8-2.

134. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of New York General Business Law § 349, *et seq*. In particular, New York law provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. By engaging in the practices discussed above, Defendants has violated New York General Business Law § 349.

135. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina General Statutes § 75-1.1, *et seq*. In particular,

North Carolina law provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). By engaging in the practices discussed above, Defendant has violated North Carolina General Statutes § 75-1.1(a).

136.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Oklahoma Statutes Title 15, § 751, *et seq*. In particular, Oklahoma law provides:

> As used in the Oklahoma Consumer Protection Act: . . . 13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; 14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. . . . Okla. Stat. Tit. 15, § 752.

Oklahoma law further provides:

> A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 et seq. of this title, when, in the course of the person's business, the person: . . . 8. Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised; . . . 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title . . . . Okla. Stat. Tit. 15, § 753.

It continues to provide:

> A. A person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . C. The deceptive trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state. Okla. Stat. Tit. 78, § 53.

137.     By engaging in the practices discussed above, Defendant has violated Oklahoma Statutes Titles 15, §§ 752 and 753, 78, § 53.

138.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pennsylvania Statutes Annotated Title 73, § 201-1, *et seq*.  In particular, Pennsylvania law provides:

(4) "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following: . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.  Pa. Stat. Ann. Tit. 73, § 201-2.

139.    By engaging in the practices discussed above, Defendant has violated Pennsylvania Statutes Annotated Title 73, § 201-2.

140.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Annotated § 39-5-10, *et seq*.  In particular, South Carolina law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. . . ."  S.C. Code Ann. § 39-5-20.  By engaging in the practices discussed above, Defendant has violated South Carolina Code Annotated § 39-5-20.

141.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tennessee Code Annotated § 47-18-101, et seq.  In particular, Tennessee law provides:

(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services; . . . (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person . . .Tenn. Code Ann. § 47-18-104.

142.     By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated Tennessee Code Annotated § 47-18-104.

143.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq*.  Specifically Defendant has violated the following sections of the Texas Deceptive Trade Practices Act ("DTPA"):

> Tex. Bus. & Com. Code §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(7), §17.46(b)(20), and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs and each member of the Texas Class; and

> Tex. Bus. & Com. Code §17.50(3): an unconscionable action or course of action as defined by §17.45(5). TEX. BUS. & COM. CODE ANN. § 17.41.

144.     By engaging in the practices discussed above, Defendants have violated Texas Business & Communication Code Annotated § 17.41.

145.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Virginia Code Annotated § 59.1-196, *et seq*.   In particular, Virginia law provides:

> The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: . . . 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. . . . 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . .Va. Code Ann. § 59.1-200.   By engaging in the practices discussed above, including, but not limited to, Defendants' undisclosed defects, Defendants have violated Virginia Code Annotated § 59.1-200.

146.     Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Washington Revised Code. § 19.86.010, *et seq*. Particularly, Washington law provides, "Unfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.020. By engaging in the practices discussed above, Defendants has violated Washington Revised Code § 19.86.020.

147.    Defendant's acts, practices, and misconduct described above constitutes unfair or deceptive acts and practices within the meaning of each of the state statutes listed above because each of these statutes prohibits deceptive conduct in consumer transactions.

148.    It was likely and reasonably foreseeable that Defendant's misconduct described more fully above would mislead Plaintiffs and Class Members who would reasonably rely on Defendant's representations to their detriment.

149.    Plaintiffs and members of the Class have been injured by reason of Defendant's unfair and deceptive acts and practices. Specifically, Plaintiffs and Class Members  (1) were unable to obtain the benefit of Defendant's advertised bargain on the Carbonlite 2.0 rod/reel combo and (2) purchased other higher-priced items at the retail stores that they did not intend to purchase or that provided Defendant with a higher profit margin. These injuries are of the type that the above state consumer protection statutes were designed to prevent and are the direct result of Defendants' unlawful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray the Court issue judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and state subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel;

B.      For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

C.      For an order finding in favor of the Plaintiffs, the nationwide Class, and the state subclasses on all counts asserted herein;

D.      For an order awarding actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For an order of restitution and all other forms of equitable monetary relief;

F.      For injunctive relief as pleaded or as the Court may deem proper;

G.      For any such equitable relief as the Court shall deem just and proper;

H.      For any attorney fees available under any state or federal statute or common law;

I.      For any punitive and/or exemplary damages, including but not limited to trebling, available under any state or federal statutory or common law;

J.      For any penalty or other type of civil damages or award under any state or federal statute

K.      For prejudgment interest on all amounts awarded; and

L.      For an order awarding Plaintiffs and the Class and Subclasses their attorneys' fees and expenses and costs of suit.


## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Respectfully Submitted,


**DOUGLAS, HAUN & HEIDEMANN, P.C.**
111 West Broadway, P.O. Box 117
Bolivar, Missouri 65613
Telephone:  (417) 326-5261
Facsimile: (417) 326-2845
nathan@dhhlawfirm.com
craig@dhhlawfirm.com


By*/s/ Nathan A. Duncan* _____
       Nathan A. Duncan
       Missouri Bar No. 60186
       Craig R. Heidemann
       Missouri Bar No. 42278
       Attorneys for Plaintiff