# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

DUSTIN ANDERSON *et al.*,     )
                               )
       Plaintiffs,         )
                               )
vs.                        )     Case No. 6:18-cv-03077-BP
                               )
BASS PRO OUTDOOR WORLD, LLC,   )
                               )
       Defendant.        )

**DEFENDANT'S SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**

WA 11791016.1

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

ARGUMENT .......................................................................................................................4

I.      Standard for Rule 12(b)(6) motion ........................................................................4

II.     Count I fails to state a claim for relief because Plaintiffs do not allege threshold requirements for a private right of action under the MMPA ...............................4

      A.      Plaintiffs do not allege they "purchased or leased" the Rod/Reel Combo .............6

      B.      The allegations about purchasing products "in relation to" the Rod/Reel Combo advertisement do not fulfill the purchase or lease requirement or the federal pleading standard ........................................................................9

      C.      Plaintiffs do not allege "ascertainable loss of money or property" ......................11

III.    Count II fails to state a claim for relief under the ACFA because Plaintiffs plead no facts suggesting the advertisement was logically related or material to their other purchases....................................................................................................14

IV.   Count IV fails because Plaintiffs lack standing to assert causes of action under other states' consumer protection laws. ..................................................................15

V.     Count III fails to state a claim for unjust enrichment .........................................16

VI.   Count V fails to state a claim for fraud.................................................................19

      A.      Plaintiffs allege no special relationship or other legal duty to speak, a necessary element for fraudulent nondisclosure ................................................20

      B.      Plaintiffs allege no cognizable damages ...........................................................22

CONCLUSION..................................................................................................................22

WA 11791016.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Standard Ins. Co. of Wisconsin v. Bracht*,
    103 S.W.3d 281 (Mo. Ct. App. 2003)....................................................................17

*Andes v. Albano*,
    853 S.W.2d 936 (Mo. banc 1993)........................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................4, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................4, 9

*Binkley v. Am. Equity Mortg., Inc.*,
    447 S.W.3d 194 (Mo. banc 2014)........................................................................16

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
    No. 08-01967, 2011 WL 6740338 (W.D. Mo. Dec. 22, 2011).........................................17, 18

*Brown v. St. Louis Metro. Towing, L.C.*,
    No. 09-00697, 2010 WL 11583334 (E.D. Mo. Mar. 4, 2010)..................................................8

*Cellco Partnership v. Hope*,
    No. 11-00432, 2011 WL 3159172 (D. Ariz. Jul. 26, 2011)....................................................18

*Cheatham v. ADT Corp.*,
    161 F. Supp. 3d 815 (D. Ariz. 2016) ....................................................................17

*Chochorowski v. Home Depot U.S.A., Inc.*,
    295 S.W.3d 194 (Mo. Ct. App. 2009).....................................................................6

*Chrysler Credit Corp. v. First Nat'l Bank*,
    746 F.2d 200 (3d Cir. 1984)........................................................................12, 18, 21

*City of Sierra Vista v. Cochise Enters., Inc.*,
    697 P.2d 1125 (Ariz. Ct. App. 1984)....................................................................18

*Conway v. CitiMortgage, Inc.*,
    438 S.W.3d 410 (Mo. banc 2014).........................................................................9

*Corbett v. Bank of Am., N.A.*,
    578 F. App'x 607 (8th Cir. 2014) ........................................................................4

WA 11791016.1

*Detling v. C.E. Edelbrok*,
    671 S.W.2d 265 (Mo. banc 1984)........................................................................5

*Exec. Bd. of Mo. Baptist Conv. v. Windermere Baptist Conf. Ctr.*,
    280 S.W.3d 678 (Mo. Ct. App. 2009)................................................................17

*Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*,
    74 F. Supp. 3d 1026 (W.D. Mo. 2015) .............................................................6

*Ford v. St. Louis Metro. Towing, L.C.*,
    No. 09-00512, 2010 WL 618491 (E.D. Mo. Feb. 18, 2010)..............................11

*Graves v. Berkowitz*,
    15 S.W.3d 59 (Mo. Ct. App. 2000)..................................................................17

*Haisch v. Allstate Ins. Co.*,
    5 P.3d 940 (Ariz. Ct. App. 2000)....................................................................15

*Hargis v. JLB Corp.*,
    357 S.W.3d 574 (Mo. banc 2011)....................................................................16

*Harris v. Mid-West Egg Donation LLC*,
    365 S.W.3d 274 (Mo. Ct. App. 2012)..........................................................20, 21

*Hess v. Chase Manhattan Bank, USA, N.A.*,
    220 S.W.3d 758 (Mo. banc 2007)..................................................................6, 20

*Hoover v. Mercy Health*,
    No. ED 97495, 2012 WL 2549485 (Mo. Ct. App. July 3, 2012)........................13

*Howard v. Turnbull*,
    316 S.W.3d 431 (Mo. Ct. App. 2010)..........................................................17, 18

*Green v. City of St. Louis*,
    870 S.W.2d (Mo. banc 1994)............................................................................5

*Jackson v. Charlie's Chevrolet, Inc.*,
    664 S.W.2d 675 (Mo. Ct. App. 1984)....................................................5, 6, 7, 12

*Kerr v. First Commodity Corp. of Boston*,
    735 F.2d 281 (8th Cir. 1984) .......................................................................21, 22

*Kesserling v. St. Louis Grp., Inc.*,
    74 S.W.3d 809 (Mo. Ct. App. 2002)................................................................21

*Lauria v. Wright*,
    805 S.W.2d 344 (Mo. Ct. App. 1991)................................................................8

iv

WA 11791016.1

*May v. Nationstar Mort., LLC*,
    No. 14-00578, 2014 WL 6607191 (E.D. Mo. Nov. 19, 2014)...........................................9, 23

*Miller v. Horn*,
    254 S.W.3d 920 (Mo. Ct. App. 2008)...................................................................................17

*State ex rel. Nixon v. Telco Directory Publ'g*,
    863 S.W.2d 596 (Mo. banc 1993)...........................................................................................4

*Noble Systems Corp. v. Alorica Central LLC*,
    543 F.3d 978 (8th Cir. 2009) ................................................................................................21

*Osage Homestead, Inc. v. Sutphin*,
    657 S.W.2d 346 (Mo. Ct. App. 1983) ..................................................................................13

*Papasan* v. *Allain*,
    478 U.S. 265 (1986).................................................................................................................4

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*,
    559 F.3d 772 (8th Cir. 2009) ..................................................................................................4

*Pleasant v. Noble Fin. Corp.*,
    54 F. Supp. 3d 1071 (W.D. Mo. 2014) ...........................................................................11, 14

*Polk v. KV Pharm. Co.*,
    No. 09-00588, 2011 WL 6257466 (E.D. Mo. Dec. 15, 2011) .................................................9

*Raster v. Ameristar Casinos, Inc.*,
    280 S.W.3d 120 (Mo. Ct. App. 2009).................................................................................6, 8

*Resort Funding, LLC v. Canyonview Development, LP*,
    No. 1 CA-CV 11-0069, 2012 WL 3760440 (Ariz. Ct. App. Aug. 30, 2012) ........................21

*Rich v. BAC Home Loans Servicing LP*,
    No. 11-00511, 2014 WL 7671615 (D. Ariz. Oct. 9, 2014)....................................................22

*Roeder v. Atlantic Richfield Co.*,
    No. 11-00105, 2011 WL 4048515 (D. Nev. Sept. 8, 2011)...................................................21

*Sellinger v. Freeway Mobile Home Sales, Inc.*,
    521 P.2d 1119 (Ariz. 1974)..............................................................................................14, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-01827, 2011 WL 4345446 (N.D. Cal. Sept. 15, 2011) .............................................11

*Thompson v. Allergan USA, Inc.*,
    993 F. Supp. 2d 1007 (E.D. Mo. 2014)...........................................................................11, 13

WA 11791016.1

*Ticor Title Ins. Co v. Mundelius*,
    887 S.W.2d 726 (Mo. Ct. App. 1994)......................................................................17

*Ulan v. Richtars*,
    446 P.2d 255 (Ariz. Ct. App. 1968)......................................................................22

*Victorian v. Wells Fargo Home Mortg.*,
    No. 15-00667, 2017 WL 2535673 (E.D. Mo. June 12, 2017)....................................8

*Walsh v. Al West Chrysler, Inc.*,
    211 S.W.3d 673 (Mo. Ct. App. 2007)...........................................................6, 7, 12

*Wang Elec., Inc. v. Smoke Tree Resort*,
    LLC, 283 P.3d 45 (Ariz. Ct. App. 2012) ...............................................................17

*Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395*,
    38 P.3d 12 (Ariz. banc 2002)...............................................................................20

*Wright v. Bath & Body Works Direct, Inc.*,
    No. 12-00099, 2012 WL 12951921 (W.D. Mo. July 10, 2012) ..............................19

WA 11791016.1

## INTRODUCTION

Plaintiffs are consumers who "were unable" to purchase a fishing rod/reel combination Defendant Bass Pro Outdoor World, LLC advertised during one of its recent sales events. Plaintiffs say they could not purchase the product because of lack of inventory, and their main cause of action (*Count I*) is a false advertising claim under the Missouri Merchandising Practices Act (the "MMPA"). In addition to the MMPA, Plaintiffs bring claims for unjust enrichment and fraud and assert consumer protection violations under the laws of Arizona and 29 other states.

Plaintiffs' threshold problem is that a private right of action under the MMPA exists only for a consumer who "***purchases or leases***" the merchandise and only when that consumer alleges nonspeculative, "***ascertainable loss***" resulting from the purchase. RSMo § 407.025.1 (emphasis added). In keeping with the statute's plain language, Missouri courts *consistently* and *repeatedly* hold that consumers who unsuccessfully "attempt to" purchase advertised merchandise lack a right of action under the MMPA. *See* Section II.A below. "Purchase or lease" and "ascertainable loss" are statutory prerequisites for Plaintiffs' MMPA claim they cannot allege—because Plaintiffs did *not* purchase the product they say Bass Pro falsely advertised.

Plaintiffs were made aware of this fundamental flaw at the outset and have been groping for a solution since they filed the lawsuit over six months ago. Their newest complaint tries to dodge the defect in two ways, neither of which saves the claims from dismissal: (1) Plaintiffs now base their MMPA claim on "purchases" of other, unspecified products they bought from Bass Pro (without saying what the products were or how those products were defective or deceptively advertised), and (2) they add an Arizona plaintiff and assert a cause of action (*Count II*) under Arizona's Consumer Fraud Act (the "ACFA"). These new theories fail because Plaintiffs allege no facts suggesting their other "purchases" were in any way related to the

1

WA 11791016.1

allegedly deceptive advertisement, and because Arizona law is not materially different from the law in Missouri.

As for Plaintiffs' other claims, Count IV is an alternative cause of action pleaded only for nonresident class members and does not apply to Plaintiffs themselves; that claim must fall with dismissal of Counts I and II. The equitable claim for unjust enrichment in Count III fails to allege necessary elements, for a host of reasons, including that there are no facts to infer Bass Pro acted unjustly in accepting money Plaintiffs paid to purchase other products. Lastly, Plaintiffs' fraud claim in Count V fails because Plaintiffs have not alleged necessary facts creating a duty to speak—a required element for a fraudulent nondisclosure claim in both Missouri and Arizona.

* * * * *

These deficiencies are fundamental problems with Plaintiffs' theory of relief. At bottom, Plaintiffs' complaint hinges on the ability of consumers who did **not** purchase the product to sue for false advertising—something the law says they cannot do. Plaintiffs had ample opportunity to fix this problem, and their second amended complaint is especially creative (to put it mildly) in trying to do so. In the end, however, Plaintiffs cannot make a false advertising case out of what they allege here. Any further amendment would be futile. The Court should dismiss all claims with prejudice.

## FACTUAL BACKGROUND

Bass Pro is a nationwide retailer of hunting, fishing, camping, and related outdoor recreation merchandise. Second Am. Compl. ¶¶ 8-9. Bass Pro has locations in many states and in Canada. *Id*. ¶ 8. Bass Pro also sells merchandise online. *Id*. ¶ 9.

Bass Pro holds an annual, nationwide sales event known as the Spring Fishing Classic. Second Am. Compl. ¶ 12. In 2018, the Spring Fishing Classic lasted from February 16 until March 4. *Id*. ¶ 47. In lead up to the 2018 event, Bass Pro ran a print and online advertisement—

2

WA 11791016.1

partly excerpted in paragraph 50—suggesting consumers could purchase a Johnny Morris Carbonlite 2.0 Baitcast Rod and Reel Combo (the "Rod/Reel Combo") for $119.97 during the event. *Id*. ¶ 50. Bass Pro ran similar advertisements on social media and on television, including television ads that ran 737 times on several different cable channels. *Id*. ¶¶ 32-33.

Plaintiffs allege they received Bass Pro's advertisement and visited one of Bass Pro's points of sale (a Bass Pro store or the company's website). Second Am. Compl. ¶¶ 73, 74, 77-78. Plaintiffs say they intended to purchase the Rod/Reel Combo but "were unable to do so" because Bass Pro did not have the product in stock. *Id*. ¶¶ 77-78. Plaintiffs allege they bought other items while visiting Bass Pro's points of sale, which Plaintiffs contend they purchased "in connection with and in relation to" the Rod/Reel Combo advertisement. *Id*. ¶¶ 74, 82, 127.

Plaintiffs assert private rights of action against Bass Pro under the MMPA and ACFA, for false and deceptive advertising in connection with the Rod/Reel Combo advertisement. Second Am. Compl. ¶¶ 119-40. Plaintiffs also bring common law claims for unjust enrichment and fraud. *Id*. ¶¶ 141-46, 200-10. The unjust enrichment and fraud claims allege, among other things, that Bass Pro committed fraud or acted unjustly by accepting Plaintiffs' purchase money when Plaintiffs bought other merchandise from Bass Pro. *Id*. Plaintiffs allege no defect, impairment of value, or other similar issue for their purchases of other merchandise.

Plaintiffs seek to represent a nationwide class of everyone who received Bass Pro's advertisement and "made a purchase in connection with or in relation to Defendant's advertisement." Second Am. Compl. ¶ 99. Plaintiffs say choice of law questions cannot be determined now, so they assert class claims under trade practices acts and unfair competition laws in 29 states in addition to Missouri and Arizona. *Id*. ¶¶ 101, 147-99.

WA 11791016.1

**ARGUMENT**

## I.      Standard for Rule 12(b)(6) motion

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted); *see also Papasan* v. *Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

To survive a motion to dismiss for failure to state a claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Papasan*, 478 U.S. at 286. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Moreover, although courts often grant leave to amend following a successful Rule 12(b)(6) motion, a court should dismiss claims with prejudice where "amending the complaint would be futile." *Corbett v. Bank of Am., N.A.*, 578 F. App'x 607, 607 (8th Cir. 2014) (citing *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009)).

## II.     Count I fails to state a claim for relief because Plaintiffs do not allege threshold requirements for a private right of action under the MMPA

The MMPA is an "economic regulation" aimed mainly at authorizing actions by the Missouri Attorney General. *State ex rel. Nixon v. Telco Directory Publ'g*, 863 S.W.2d 596, 600 (Mo. banc 1993). As Missouri courts explain, "[t]he principal thrust" of the MMPA "is directed toward authorizing the Attorney General to enjoin those who sell or attempt to sell merchandise

WA 11791016.1

from using unlawful practices." *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984); *see also Detling v. C.E. Edelbrok*, 671 S.W.2d 265, 272 (Mo. banc 1984) ("The [MMPA] authorizes the Attorney General to pursue various enumerated remedies in the event of deceptive or fraudulent practices."), *abrogated on other grounds as recognized in Green v. City of St. Louis*, 870 S.W.2d, 794, 796 (Mo. banc 1994).

Thus, section 407.020 of the MMPA specifies certain unlawful practices and authorizes the Missouri Attorney General (and other prosecuting authorities) to commence criminal actions against persons who engage in the conduct. RSMo § 407.020. The MMPA also grants the Missouri Attorney General rulemaking authority (*id.* § 407.145) and authorizes him to pursue investigations (*id.* § 407.040), issue orders (*id.* § 407.095), and seek injunctions and civil penalties for unlawful acts (*id.* §§ 407.100, 407.110).

The MMPA grants a right of action to **private** litigants only in **limited circumstances outlined in section 407.025**. RSMo § 407.025.1. Under that provision, a private litigant may sue for damages if he or she "*purchases or leases merchandise primarily for personal, family or household purposes*" and thereby "*suffers an ascertainable loss of money or property*" resulting from one of the unlawful practices identified in section 407.020. *Id.* (emphasis added). So not every "unlawful practice" under section 407.020 gives a right of action to a private litigant. A complaint states a private action under the MMPA *only* when the plaintiff:

(1) purchased or leased the merchandise from the defendant;

(2) for personal, family, or household purposes; and

(3) suffered an ascertainable loss of money or property;

(4) as a result of an act declared unlawful by section 407.020.

5

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007); *see also*

*Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. Ct. App. 2009) (requiring

plaintiff to plead § 407.025 elements "[i]n order to state a claim"); *Fabas Consulting Int'l, Inc. v.*

*Jet Midwest, Inc.*, 74 F. Supp. 3d 1026, 1030 & n. 4 (W.D. Mo. 2015) (requiring same and noting

"the private right of action [under the MMPA] was and is explicitly limited by the legislature").

Plaintiffs have not and cannot allege the first and third elements necessary to state a

private right of action under the MMPA: Plaintiffs did not "purchase or lease" the Rod/Reel

Combo, and they did not suffer an "ascertainable loss of money or property."[1]

### A.    Plaintiffs do not allege they "purchased or leased" the Rod/Reel Combo

The plain language of section 407.025 requires plaintiffs to have "purchased or leased"

the merchandise from the defendant to bring a claim under the MMPA. RSMo § 407.025.1.

Because this provision requires an actual purchase or lease, Missouri courts consistently hold

that "an unsuccessful attempt to purchase provides no basis for a cause of action under the

MMPA." *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 130 (Mo. Ct. App. 2009) (citing

*Walsh v. Al West Chrysler, Inc.*, 211 S.W.3d 673 (Mo. Ct. App. 2007) and *Jackson*, 664 S.W.2d

at 677. The legislature's rationale for structuring the MMPA in this way is plain. Alleged

deceptive or wrongful acts resulting in no pecuniary harm to the consumer are reserved for the

Attorney General and his discretion about whether legal action is necessary to protect the public

interest. *See, e.g.*, RSMo § 407.030.1 (permitting Attorney General to accept assurance of

voluntary compliance instead of penalties). Only when a customer purchases or leases

merchandise—thus triggering a possible pecuniary loss—is the limited private right of action

under the MMPA triggered.

---

[1] Bass Pro will dispute Plaintiffs' ability to prove all elements of section 407.025, including that
Bass Pro committed unlawful practices, if Plaintiffs' MMPA claim survives this motion.

WA 11791016.1

Several cases are directly on point here. In *Jackson v. Charlie's Chevrolet, Inc.*, for example, a plaintiff sued a car dealer for alleged misrepresentations during a motor vehicle transaction. 664 S.W.2d at 676. The plaintiff and the car dealer agreed to a price for the vehicle and signed a purchase contract, but no money exchanged hands and the car dealer never transferred ownership. *Id.* at 676-77. In determining whether the plaintiff had a right of action under the MMPA, the Missouri Court of Appeals noted "[b]y the language of § 407.025, the legislature provided a cause of action for one who purchases, ***not one who attempts or offers to purchase***." *Id.* at 677 (emphasis added). Because the MMPA grants a private right of action "only to one who purchases and suffers damages," someone "***who attempts to purchase, but who never receives the goods or services nor pays anything of value***" lacks standing under the MMPA. *Id.* (emphasis added). Such instances "may be subject to action by the Attorney General," but they support no private right of action. *Id.* The Missouri Court of Appeals recently reaffirmed the *Jackson* case in *Walsh v. Al West Chrysler, Inc.*, which reiterated that "[s]omeone who seeks to purchase, but never receives the goods nor pays value" cannot state a claim under the MMPA. 211 S.W.3d at 675.

The purchase or lease requirement in section 407.025 has been applied in other cases as well. In *Freeman Health System v. Wass*, a consumer sued a health care provider alleging the provider charged him and a putative class for services, in ways that violated the MMPA. 124 S.W.3d 504, 506-07 (Mo. Ct. App. 2004). But the plaintiff had only been charged for the services; he never paid for them. *Id.* at 506. Citing Webster's Dictionary, the Missouri Court of Appeals construed "purchase" in section 407.025 to mean "to obtain by paying money or its equivalent." *Id.* at 507. Because the plaintiff "failed to remit any type of payment for that which

7

WA 11791016.1

he received" and did not "provide [the defendant] with an equivalent exchange of value," there was no purchase and the claims stated no private right of action under the MMPA. *Id.*

Similarly, in *Ziglin v. Players MH, L.P.*, when a casino patron "attempted to" place a bet the casino refused, the Missouri Court of Appeals held the patron could not state a cause of action under the MMPA, because an "attempt to place a bet" is not a "purchase" and "is insufficient to state a cause of action under [s]ection 407.025." 36 S.W.3d 786, 788, 790 (Mo. Ct. App. 2001); *accord Raster*, 280 S.W.3d at 129-30 ("The *Ziglin* case followed a line of cases wherein the courts have found that an unsuccessful attempt to purchase provides no basis for a cause of action under the MMPA.")

The list of cases enforcing the "purchase or lease" requirement in section 407.025 continues on. *See Lauria v. Wright*, 805 S.W.2d 344, 346 (Mo. Ct. App. 1991) (plaintiff had no right of action under the MMPA because "[t]he tender of an earnest deposit with an offer to enter into a contract cannot be construed to be a purchase" under section 407.025); *Brown v. St. Louis Metro. Towing, L.C.*, No. 09-00697, 2010 WL 11583334, at *3-4 (E.D. Mo. Mar. 4, 2010) (dismissing MMPA claim on the pleadings where plaintiff never purchased services from the defendant); *Victorian v. Wells Fargo Home Mortg.*, No. 15-00667, 2017 WL 2535673, at *9 n.7 (E.D. Mo. June 12, 2017) (consumer had no cause of action under the MMPA where claims arose from "fruitless negotiations" rather than purchase or lease).

Here, Plaintiffs expressly allege they "were unable" to purchase the Rod/Reel Combo. Second Am. Compl. ¶ 78. In fact, Plaintiffs' *entire theory of relief* is that they wanted to buy the Rod/Reel Combo but could not. This is a classic case where Plaintiffs want to make an MMPA claim out of unsuccessfully "attempting to" purchase the advertised product. Such allegations, if

8

WA 11791016.1

cognizable at all, are the sole province of the Attorney General. Missouri law is clear they give Plaintiffs no private right of action.

Plaintiffs' theory of relief therefore fails the "purchase or lease" requirement in section 407.025, as well as the long line of cases holding a mere "attempt to purchase" states no private right of action under the MMPA. The Court should dismiss Count I on this basis alone.

**B. The allegations about purchasing products "in relation to" the Rod/Reel Combo advertisement do not fulfill the purchase or lease requirement or the federal pleading standard**

Plaintiffs try to fix this fundamental defect by saying they purchased *other* products while visiting Bass Pro's points of sale. *See* Second Am. Compl. ¶¶ 70-71, 74, 82, 127. These vague and conclusory allegations do not fulfill the "purchase or lease" requirement in section 407.025 and fall well short of the federal pleading standard.

On its face, section 407.025 requires a *relationship* between the alleged unlawful practices and the merchandise a plaintiff purchased. Section 407.025 requires a private litigant to have purchased or leased merchandise and to have "***thereby***" suffered an ascertainable loss "***as a result of***" the alleged unlawful practices. RSMo § 407.025.1 (emphasis added). As one court succinctly summarized: "the litigant seeking relief under the MMPA must allege *a relationship between the challenged conduct and the purchased or leased merchandise*." *May v. Nationstar Mort., LLC*, No. 14-00578, 2014 WL 6607191, at *9 (E.D. Mo. Nov. 19, 2014) (citing *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415 (Mo. banc 2014)) (emphasis added); *see also Amburgy*, 671 F. Supp. 2d at 1057 ("[L]oss must occur in relation to purchase or lease of merchandise.").

Moreover, the federal pleading standard in *Twombly* and *Iqbal* applies to Plaintiffs' MMPA claims and requires them to plead, not "labels and conclusions," but "independent facts" supporting their claims. *See, e.g., Polk v. KV Pharm. Co.*, No. 09-00588, 2011 WL 6257466, at

WA 11791016.1

*6 (E.D. Mo. Dec. 15, 2011). A federal court, therefore, should dismiss MMPA claims that formulaically recite the elements without alleging independent facts. *Id.*

Plaintiffs' allegations about purchasing other merchandise from Bass Pro are threadbare, formulaic assertions that parrot the language of the MMPA and Missouri case law:

- "All of Plaintiffs' and class members' purchases were 'in connection with' the fraudulent, deceptive and unlawful advertisement because the purchases 'had a relationship to' the fraudulent, deceptive and unlawful advertisement."

- "Plaintiffs and class members responded to the fraudulent ad and made purchases in connection with and in relation to the fraudulent, deceptive, misleading and unlawful advertisements."

- "Plaintiffs and class members made purchases of merchandise in connection with and in relation to the fraudulent, misleading, deceptive and unlawful advertisement and otherwise changed their positions to their detriment."

- "Plaintiffs and class members made purchases . . . in relation to Defendant's deception, fraud, false pretense, false promise, misrepresentation [and *etc.*]"

Second Am. Compl. ¶¶ 71, 74, 82, 127.

There is nothing more. Nowhere in the latest complaint do Plaintiffs say what these other purchases were, why they were "in relation to" Bass Pro's allegedly deceptive advertisement, or even when these other purchases occurred. Reading between the lines, what Plaintiffs appear to imply is that Bass Pro's Rod/Reel Combo advertisement somehow misled or deceived them into purchasing different products when they visited Bass Pro's points of sale during the 2018 Spring Fishing Classic. But Plaintiffs allege no *facts* suggesting this occurred, and it is implausible to infer that it did. Nothing in the ad forced Plaintiffs or other consumers to purchase other products when they visited Bass Pro's stores or made representations about other products. In fact, according to Plaintiff's complaint, the ad says *nothing at all* about products other than the Rod/Reel Combo. Second Am. Compl. ¶ 50.

10

WA 11791016.1

In any event, the notion that other, unspecified purchases satisfy the purchase or lease requirement in section 407.025 would stretch that provision far beyond its intended meaning. In section 407.025, the Missouri legislature carefully and explicitly limited a consumer's right of action to instances in which the consumer "purchased or leased" the merchandise or services. The legislature left other cases for the Attorney General to pursue in his discretion. Allowing plaintiffs to maintain a lawsuit when they did *not* purchase or lease the deceptively advertised product would usurp the Attorney General's role and contravene the MMPA's plain language. The other purchases do not save Plaintiffs' MMPA claim from dismissal.

**C.  Plaintiffs do not allege "ascertainable loss of money or property"**

In addition to the purchase or lease requirement, section 407.025 also requires a plaintiff to have suffered an "ascertainable loss of money or property" to state a claim under the MMPA. RSMo § 407.025.1. Like the purchase or lease requirement, ascertainable loss is an "essential element" and prerequisite to pleading a private right of action. *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).

Because of the word "ascertainable," courts require plaintiffs to plead loss of money or property that is "sufficiently definite and certain to support a monetary award" to survive a motion to dismiss. *Pleasant v. Noble Fin. Corp.*, 54 F. Supp. 3d 1071, 1079 (W.D. Mo. 2014) (citing *Ford v. St. Louis Metro. Towing, L.C.*, No. 09-00512, 2010 WL 618491, at *13 (E.D. Mo. Feb. 18, 2010)). A plaintiff fails to state a private right of action under section 407.025 where he alleges only "speculative, non-pecuniary harm or where he alleges no out-of-pocket costs." *Pleasant*, 54 F. Supp. 3d at 1079 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-01827, 2011 WL 4345446, at *2-3 (N.D. Cal. Sept. 15, 2011)).

Importantly, "[a] claim of damages for time expended is not sufficiently definite or certain to support a monetary award for 'ascertainable loss' under the MMPA." *Amburgy*,

11

671 F. Supp. 2d at 1058 (citing *Walsh*, 211 S.W.3d at 675). And Missouri courts hold that plaintiffs who unsuccessfully tried to purchase goods or services do not suffer ascertainable loss, because they paid no money. *Jackson*, 664 S.W.2d at 677; *see also Freeman Health Sys.*, 124 S.W.3d at 507-08 (dismissing MMPA claim for lack of ascertainable loss where claimant "paid *nothing*" for the service at issue) (emphasis in original).

Plaintiffs paid nothing for the Rod/Reel Combo at issue, so they have no ascertainable loss. Plaintiffs still try to allege three categories of loss, none of which is "ascertainable" or a loss of "money or property" under the MMPA.

First, Plaintiffs allege vaguely that they suffered ascertainable loss in the "[a]mounts paid to purchase merchandise in connection with and in relation to the false, deceptive, misleading[,] and unlawful advertisement." Second Am. Compl. ¶ 128(b). This is a reference to the fact Plaintiffs supposedly bought *other* merchandise once they visited Bass Pro's points of sale. The allegation is insufficient for the reasons already set out above, and because section 407.025 requires Plaintiffs to allege ascertainable loss "as a result of" the allegedly unlawful practice. Plaintiffs plead no facts plausibly suggesting their unspecified, other purchases resulted from the Rod/Reel Combo advertisement.

In any event, Missouri courts hold that "other purchases" cannot constitute ascertainable loss under the MMPA. In *Jackson v. Charlie's Chevrolet, Inc.*, the claimant was unable to purchase the motor vehicle at issue, so later purchased a different automobile. *Jackson*, 664 S.W.2d at 676. The court *rejected* the plaintiff's argument that the other purchase constituted "ascertainable loss," holding "[t]he fact that plaintiff paid more money for a different and newer automobile *is certainly not the 'ascertainable loss of money or property' required by § 407.025*." *Id.* at 677 (emphasis added). As in *Jackson*, Plaintiffs received value for the money they spent to

WA 11791016.1

buy other merchandise, and there are no allegations Plaintiffs received products worth less than what they paid. The money Plaintiffs spent to purchase other merchandise is not ascertainable loss under the MMPA.

Second, Plaintiffs allege they lost the "benefit of purchasing a $239.98 rod/reel for $119.97," a loss they value at "approximately $119." Second Am. Compl. ¶ 128(a). This theory is risible for a number of related reasons. Initially, the argument suggests Plaintiffs had an indelible right to purchase the product at the discounted price, and the loss of that right is itself a pecuniary loss. But such an amorphous right is not found in even the most generous interpretation of the outermost penumbra of the MMPA; and advertisements generally are not considered binding offers that consumers have the right to accept. *See, e.g.*, *Osage Homestead, Inc. v. Sutphin*, 657 S.W.2d 346, 352 (Mo. Ct. App. 1983).

And even if a right to purchase the discounted product existed, how were Plaintiffs harmed by this alleged loss? They do not plead they were forced to purchase the product at a higher price elsewhere. They do not allege they lost the ability to resell the product at a profit. They fail to allege any way they lost even a penny of money due to the advertisement.

Perhaps most glaring, Plaintiffs misapply and misunderstand Missouri's benefit-of-the-bargain rule. The benefit-of-the-bargain rule "awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received." *Thompson*, 993 F. Supp. 2d at 1012. In other words, Plaintiffs must allege Bass Pro's unlawful practices caused them to pay more for a product than what they ultimately got. *Id.*; *see also Hoover v. Mercy Health*, No. ED 97495, 2012 WL 2549485, at *6 (Mo. Ct. App. July 3, 2012) (dismissing MMPA claim where plaintiff failed to allege "how or why the amount that he paid . .

. was more than the reasonable value of the goods and services that he received"), *rev'd on other grounds in* 408 S.W.3d 140 (Mo. Banc 2013).

But this is not a case where Plaintiffs paid money for the Rod/Reel Combo and received something of lessor value. In fact, Plaintiffs say they were **unable** to buy the Rod/Reel Combo, admitting they spent no money on the merchandise Bass Pro supposedly falsely advertised. The benefit-of-the-bargain rule does not fit what Plaintiffs allege here, and their inability to purchase a particular product is not a "pecuniary" or "out-of-pocket" loss that creates a private right of action under section 407.025. *Pleasant*, 54 F. Supp. 3d at 1079.

Third, Plaintiffs allege loss in the form of "standard IRS mileage" from having "travel[ed] to a point of sale." Second Am. Compl. ¶ 128(c). But the fact the IRS allows a tax deduction for business travel does not mean Plaintiffs suffered an actual, out-of-pocket loss of money or property here. A trip to one of Bass Pro's stores, for example, is unlikely to result in actual depreciation in the value of Plaintiffs' vehicles, and depreciation alone is not a pecuniary or out-of-pocket cost until Plaintiffs sell their cars and receive less money. The alleged "travel costs" are non-pecuniary losses, equivalent to damages for time expended, and are not sufficiently definite or certain to support a private right of action under the MMPA.

## III. Count II fails to state a claim for relief under the ACFA because Plaintiffs plead no facts suggesting the advertisement was logically related or material to their other purchases

Plaintiffs' new Arizona cause of action fares no better than their claim under the MMPA. Like the MMPA, the ACFA is a "penal" statute and economic regulation authorizing the Arizona Attorney General to file litigation, seek an injunction, or investigate unlawful practices "when he believes it to be in the public interest." *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1121-22 (Ariz. 1974); *see also* Ariz. Rev. Stat. § 44-1521 *et seq*. The ACFA contains no express right of action for private litigants, but the Arizona Supreme Court read an implied

14

WA 11791016.1

private right of action into the law in 1974. *See Sellinger*, 521 P.2d at 1122. The ACFA differs from the MMPA in other material respects, including that it requires proof of actual, subjective reliance on the part of each plaintiff, including unnamed class members.[2]

In holding there is an implied private right of action under the ACFA, the Arizona Supreme Court found that "such right of action is granted by [Ariz. Rev. Stat.] § 44-1533." *Sellinger*, 521 P.2d at 1122. That provision reserves claims against a defendant who "has **acquired any monies or property**, real or personal, **by means of** any practice declared by unlawful by this article." Ariz. Rev. Stat. § 44-1533(B). As in Missouri, Arizona courts therefore require consumer fraud plaintiffs to show the allegedly unlawful practices were "logically related" to the purchase at issue and "material" in causing plaintiffs harm. *Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000).

Again, Plaintiffs do not allege they suffered damage by means of Bass Pro's Rod/Reel Combo advertisement, because Plaintiffs did not buy the advertised product. And Plaintiffs allege no independent facts suggesting the Rod/Reel Combo advertisement was logically related or material to their decisions to purchase other products from Bass Pro, or that they received anything less than an equivalent exchange of value for those purchases. The ACFA claim should be dismissed for the same reasons as the MMPA claim in Count I.

IV.     **Count IV fails because Plaintiffs lack standing to assert causes of action under other states' consumer protection laws.**

Plaintiffs' Count IV is pleaded in the alternative. Plaintiffs note potentially problematic choice-of-law issues and thus assert causes of action under 29 states' trade practices acts or

---

[2] For this reason (as set out in Bass Pro's contemporaneous motion to strike), federal courts routinely decline to certify class actions brought under the ACFA.

15

unfair competition laws "if it is later determined by the Court that the choice of law rules require the application of these state laws." Second Am. Compl. ¶¶ 101, 148.

But Plaintiffs cannot represent a putative class under other states' laws if their own claims are properly dismissed. *See, e.g., Amburgy*, F. Supp. 2d at 1056-57 ("To the extent plaintiff seeks to invoke similar statutes enacted in other States to bring this claim, plaintiff cites no authority, and the Court is aware of none, which permits a Missouri resident to bring a state law claim against another Missouri resident through the invocation of another State's statutes, where such a cause of action does not exist under Missouri law.")

Plaintiffs do not contend another state's laws govern their own claims. Nor could they. Plaintiffs are residents of Missouri and Arizona and do not allege they visited other states to buy the Rod/Reel Combo. Second Am. Compl. ¶¶ 3-6. Bass Pro's headquarters are in Missouri, and Plaintiffs chose to sue Bass Pro in Missouri. *Id.* ¶ 10. Plaintiffs have no cognizable private right of action under Missouri or Arizona law, for the reasons set out above, and thus cannot represent a class under laws of other states. Count IV should be dismissed as well.

## V.     Count III fails to state a claim for unjust enrichment

In Count III, Plaintiffs assert a vague, six-paragraph claim for "unjust enrichment." Second Am. Compl. ¶¶ 141-46. Plaintiffs say Bass Pro was unjustly enriched when Plaintiffs bought merchandise at Bass Pro's points of sale. *Id.*

Unjust enrichment is an equitable remedy related to quasi-contract (often applying in quantum meruit cases), and Plaintiffs come nowhere near the facts necessary to state a claim for that relief. To state a claim for unjust enrichment in Missouri, a plaintiff must allege "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances."

WA 11791016.1

*Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. banc 2014) (quoting *Hargis v. JLB Corp.*, 357 S.W.3d 574, 577-78 (Mo. banc 2011)).

"The third element, unjust retention of the benefit, is considered the most significant and the most difficult of the elements." *Exec. Bd. of Mo. Baptist Conv. v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009). "Mere receipt of benefits is not enough." *Id.* Instead, "[u]njust retention of benefits only occurs when the benefits were 'conferred (a) in misreliance on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint.'" *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (quoting *Graves v. Berkowitz*, 15 S.W.3d 59, 62 (Mo. Ct. App. 2000).

Relatedly, Missouri courts hold that a defendant acts unjustly only when the defendant retains the benefit "***without paying its reasonable value***." *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. Ct. App. 2008) (emphasis added). And "[t]here can be no unjust enrichment if the parties receive what they intended to obtain." *Howard*, 316 S.W.3d at 436 (quoting *Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo. Ct. App. 2003)); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-01967, 2011 WL 6740338, at *4 (W.D. Mo. Dec. 22, 2011) (same)*; see also Ticor Title Ins. Co v. Mundelius*, 887 S.W.2d 726, 728 (Mo. Ct. App. 1994) ("A person who voluntarily pays money with full knowledge of the facts cannot recover").

Unjust enrichment in Arizona is largely the same as in Missouri. Unjust enrichment occurs in Arizona when "one party has and retains money or benefits that in justice and equity belong to another." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 832 (D. Ariz. 2016). The elements of the claim are "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and

17

WA 11791016.1

impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort*, LLC, 283 P.3d 45, 49 (Ariz. Ct. App. 2012). Moreover, for plaintiffs to have been "impoverished" under Arizona law they must have incurred a loss greater than the value of whatever they might have received. *See, e.g., Cellco Partnership v. Hope*, No. 11-00432, 2011 WL 3159172, at *6 (D. Ariz. Jul. 26, 2011); *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 132 (Ariz. Ct. App. 1984).

Plaintiffs fail to state a claim for unjust enrichment here, for at least four reasons.

<u>First</u>, the benefits Plaintiffs claim to have conferred on Bass Pro are (1) "entering [Bass Pro's] retail stores" and (2) "making purchases at [Bass Pro's] points of sale." Second Am. Compl. ¶¶ 142-43. The mere fact Plaintiffs entered Bass Pro's stores is no benefit in and of itself. The only "benefit" plausibly at issue is the money Plaintiffs spent on other unspecified products while they were there—merchandise *not* the subject of the allegedly deceptive advertisement.

<u>Second</u>, Plaintiffs plead no facts suggesting they failed to receive exactly what they intended to obtain when they purchased other products. The only plausible inference from the facts in the complaint is that Plaintiffs decided to purchase (and did receive) other merchandise once they visited a point of sale. Plaintiffs' purchase of merchandise they voluntarily chose to buy is not unjust enrichment. *See, e.g.*, *Howard*, 316 S.W.3d at 436; *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-01967, 2011 WL 6740338, at *4.

<u>Third</u>, no facts suggest Plaintiffs failed to receive "reasonable value" or were "impoverished" from having purchased the other products. Plaintiffs do not even say what the other products were, let alone allege they received no equivalent exchange of value for their purchases or that the products were not what Bass Pro represented them to be.

18

**Fourth**, Plaintiffs allege no facts supporting a plausible inference that Bass Pro acted unjustly or without justification in accepting and retaining Plaintiffs' purchase money. This is not a case where Plaintiffs were acting under constraint, dutifully intervening in Bass Pro's affairs, or misrelying on some right or legal duty. And there are no allegations of fraud or deception relating to the products Plaintiffs purchased. There simply is no allegation allowing the Court to infer Bass Pro acted unjustly or without justification by accepting Plaintiffs' payment and providing them with merchandise.

It is important to understand why unjust enrichment is a square peg in Plaintiffs' round-hole theory. Unjust enrichment is an "equitable remedy of quasi-contract," and courts have warned against allowing the doctrine to encroach into cases involving consumer purchases. *See, e.g., Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099, 2012 WL 12951921, at *4 (W.D. Mo. July 10, 2012) (stating "[t]he quasi-contract remedy of unjust enrichment is not meant to serve as a substitute for product liability or breach-of-warranty litigation" and warning against "interpreting Missouri's equitable remedy of quasi-contract to operate in protection of a consumer every time a purchased product breaks following a typical business transaction."). Allowing Plaintiffs to pursue an unjust enrichment theory here would nullify express limits on private rights of action in consumer fraud cases—by allowing Plaintiffs to bring a back-door consumer fraud action without meeting the statutory requirements. That is not how the equitable remedy of unjust enrichment is supposed to operate. Count III should be dismissed.

## VI.    Count V fails to state a claim for fraud

Plaintiffs' fraud claim in Count V alleges Bass Pro misrepresented the availability of the Rod/Reel Combo by *failing to disclose* that supply was limited. Second Am. Compl. ¶ 96.[3]

---

[3] Plaintiffs also allege that Bass Pro made affirmative misrepresentations and intentionally concealed material facts. Second Am. Compl. ¶¶ 201-02. Plaintiffs allege no specific

WA 11791016.1

Plaintiffs' claim is thus for fraudulent nondisclosure. This fraudulent nondisclosure claim fails because Plaintiffs allege no facts creating a duty to speak and because Plaintiffs do not allege cognizable damages.

### A. Plaintiffs allege no special relationship or other legal duty to speak, a necessary element for fraudulent nondisclosure

Fraudulent nondisclosure is not a separate tort but is a species of fraudulent misrepresentation. *See Harris v. Mid-West Egg Donation LLC*, 365 S.W.3d 274, 276 (Mo. Ct. App. 2012) (citing *Hess*, 220 S.W.3d at 765). The difference between fraudulent misrepresentation and fraudulent nondisclosure is that, in a nondisclosure case, the first element (the existence of a false, material representation) is replaced by a defendant's silence in the face of a legal duty to speak. *Harris*, 365 S.W.3d at 276 (citing *Hess*, 220 S.W.3d at 765). Silence or nondisclosure on its own does not give rise to a claim for fraudulent nondisclosure. Silence becomes misrepresentation "*only when there is a duty to speak*." *Harris*, 220 S.W.3d at 276 (citing *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993)) (emphasis added); *accord Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 35-36 (Ariz. banc 2002) (duty to speak required in fraudulent nondisclosure cases in Arizona).

Courts in Missouri and Arizona look to the relationship between the parties to determine whether there was a duty to speak. The parties' relationship "is crucial because under Missouri law different relationships carry with them different responsibilities and consequent duties." *Harris*, 365 S.W.3d at 277. "[R]elationships of trust and confidence," like fiduciary or patient-physician relationships, trigger a duty to speak when a party has "superior knowledge or

---

misrepresentations or other *facts* to support these theories, so they must be dismissed for lack of particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

WA 11791016.1

information not within the fair and reasonable reach of the other party." *Id.* at 278. For normal "commercial transactions," Missouri and Arizona follow the Restatement (Second) of Torts, which sets out five instances triggering a party's duty to speak "before the transaction is consummated," and none of which applies here. *Id.* at 277 & n.1 (citing *Kesserling v. St. Louis Grp., Inc.*, 74 S.W.3d 809, 814 (Mo. Ct. App. 2002) and Restatement (Second) of Torts § 551 (1977); *see also Resort Funding, LLC v. Canyonview Development, LP*, No. 1 CA-CV 11-0069, 2012 WL 3760440, at * 9-11 (Ariz. Ct. App. Aug. 30, 2012).

On the other hand, without a confidential relationship or commercial transaction between the parties, there is no duty to speak and no claim for fraudulent nondisclosure. *See, e.g.*, *Chrysler Credit Corp. v. First Nat'l Bank*, 746 F.2d 200 (3d Cir. 1984) ("Section 551 of the Restatement of Torts, Second, accords liability for nondisclosure only if the parties are engaged in a business transaction or stand in a fiduciary relationship."); *Resort Funding, LLC*, No. 1 CA-CV 11-0069, 2012 WL 3760440, at *11 (rejecting fraudulent nondisclosure claim involving "ongoing negotiations" instead of completed business transaction); *accord Noble Systems Corp. v. Alorica Central LLC*, 543 F.3d 978, 985 (8th Cir. 2009) (no duty to disclose where no relationship exists); *Roeder v. Atlantic Richfield Co.*, No. 11-00105, 2011 WL 4048515, at *10 (D. Nev. Sept. 8, 2011) (same).

Plaintiffs allege no facts here that would create a fiduciary relationship or other relationship of trust that triggers legal duties toward Plaintiffs. And Plaintiffs allege no business transaction involving the Rod/Reel Combo at all, because they never purchased the product. When it comes to the Rod/Reel Combo, Plaintiffs were at best prospective purchasers or involved in negotiations. These allegations create no legal duty to Plaintiffs and cannot be the basis for fraudulent nondisclosure.

WA 11791016.1

### B. Plaintiffs allege no cognizable damages

Plaintiffs' fraud claim also fails for failure to plead cognizable damages. Courts in Missouri and Arizona usually follow the "benefit of the bargain" rule for damages in consumer fraud cases. *See, e.g., Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281, 285 (8th Cir. 1984); *Rich v. BAC Home Loans Servicing LP*, No. 11-00511, 2014 WL 7671615, at *8 (D. Ariz. Oct. 9, 2014) (citing *Ulan v. Richtars*, 446 P.2d 255, 261 (Ariz. Ct. App. 1968)). Benefit of the bargain focuses on "the difference between the represented value of the property and the actual value of the property" the consumer purchased. *Kerr,* 735 F.2d at 285; *Rich*, No. 11-00511, 2014 WL 7671615, at *8. In "peculiar circumstances" where the benefit of the bargain is inadequate to measure damages, Plaintiffs may recover only those damages that were "a direct result" of the alleged misrepresentation or nondisclosure. *Kerr,* 735 F.2d at 285; *see also* MAI 4.01.

The benefit of the bargain rule does not apply here, because Plaintiffs nowhere allege they received a product worth less than they paid. Indeed, Plaintiffs *never paid Bass Pro anything* for the Rod/Reel Combo. The rest of the claimed damages—money spent purchasing other merchandise and Plaintiffs' travel costs—were not plausibly "a direct result" of the advertisement. Second Am. Compl. ¶ 128. In particular, the notion that Plaintiffs' purchase of other items was a direct result of the Rod/Reel Combo advertisement, instead of Plaintiffs' voluntarily decision to purchase other items while visiting Bass Pro's store, is implausible on its face. Count V should be dismissed for this reason as well.

### CONCLUSION

For all these reasons, Bass Pro requests that the Court grant the motion to dismiss by dismissing Plaintiffs' second amended complaint with prejudice.

WA 11791016.1

DATED: September 14, 2018.

Respectfully submitted,

**SPENCER FANE LLP**

By: */s/ Michael W. Seitz*

Jason C. Smith, Mo. Bar No. 57657
2144 E. Republic Road, Suite B300
Springfield, Missouri 65804
(417) 888-1000 (telephone)
(417) 881-8035 (facsimile)
jcsmith@spencerfane.com

Joshua C. Dickinson, Mo. Bar No. 51446
Michael W. Seitz, Mo. Bar No. 69337
1000 Walnut, Suite 1400
Kansas City, Missouri 64106
(816) 474-8100 (telephone)
(816) 474-3216 (facsimile)
jdickinson@spencerfane.com
mseitz@spencerfane.com

*Attorneys for Bass Pro Outdoor World, LLC*

23

**CERTIFICATE OF SERVICE**

     I certify this document was filed electronically with the United States District Court for the Western District of Missouri on September 14, 2018, with notice of case activity generated and sent electronically to all counsel of record.

                                                /s/ *Michael W. Seitz*

WA 11791016.1